IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TYREEK JACKSON,** : |  |
| **Plaintiff** : |  |
|  : |  |
| v. : | **CIVIL ACTION NO. 19-CV-5824** |
|  : |  |
| **PAUL GREGORY LITTLE, D.O.,** : |  |
| *et al.* : |  |
| **Defendants.** : |  |

## MEMORANDUM

**PRATTER, J.**                                                                                           **FEBRUARY 5, 2020**

This matter comes before the Court by way of a Complaint (ECF No. 2), brought by Plaintiff Tyreek Jackson, proceeding *pro se*. Also, before the Court is Mr. Jackson's Motion to Proceed *In Forma Pauperis* (ECF No. 1).[1] Because it appears that Mr. Jackson is unable to afford to pay the filing fee, the Court will grant him leave to proceed *in forma pauperis*. For the following reasons, the Complaint will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and Mr. Jackson will be granted leave to file an amended complaint within forty-five (45) days.

---

[1] By Order dated December 19, 2019, the Court initially denied Mr. Jackson's request to proceed *in forma pauperis* without prejudice based on his failure to submit a certified copy of his prisoner account statement. (ECF No. 5 at 1-2.) The Court granted Mr. Jackson thirty (30) days to file the required account statement, which Mr. Jackson filed on January 3, 2020. (*See* ECF No. 6.) Accordingly, Mr. Jackson's Motion to Proceed *In Forma Pauperis* is now properly before the Court for review.

## I. FACTUAL ALLEGATIONS[2]

Mr. Jackson, a prisoner currently incarcerated at State Correctional Institution – Chester ("SCI Chester"), brings this civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of his Eighth and Fourteenth Amendment rights by the following Defendants: (1) Paul Gregory Little, D.O., Medical Director at SCI Chester; (2) Mark Wahl, Deputy Warden; (3) Kathleen Favaloro, a registered nurse and the Correctional Health Care Administrator at SCI Chester; (4) Shirley Laws-Smith, a registered nurse and the former Correctional Health Care Administrator at SCI Chester; (5) Samirrah Minnis, Clinical Coordinator with Correct Care Solutions/Well Path Practitioners ("CCSWPP"); (6) Jennifer Collier, registered nurse with CCSWPP; (7) Tinnita McDuffie, the Supervisor of Medical Records at SCI Chester; (8) John Nicholson, a physician contracted by CCSWPP; (9) Benjamin V. Robinson, M.D., currently with CCSWPP and Corizon Health Inc.; and (10) Mandee Quinn, Assistant Warden and Grievance Coordinator at SCI Chester.[3] (ECF No. 2 at 3.) Mr. Jackson's Complaint does not specify whether he is suing the Defendants in their individual and/or official capacities.

Mr. Jackson's allegations relate to specific instances that occurred at SCI Chester on or about September 25, 2018 and May 21, 2019, respectively. (*Id.* at 5.) The essence of Mr. Jackson's Complaint seems to be that Dr. Little misdiagnosed Mr. Jackson on two separate occasions. (*Id.* at 6.) Specifically, Mr. Jackson contends that he was misdiagnosed with Hepatitis C and that his medical records were altered to confirm that misdiagnosis despite the fact that he did not have Hepatitis C when he first arrived at SCI Chester. (*Id.* at 6-7.)

---

[2] The facts set forth in this Memorandum are taken from Mr. Jackson's Complaint and all the documents and exhibits attached thereto.

[3] The Court uses the pagination assigned to the Complaint by the CM/ECF docketing system.

2

According to Mr. Jackson, he learned about this misdiagnosis in his medical chart on or about September 25, 2018 during a follow-up appointment with a specialist at Penn Presbyterian Medical Center. (*Id.* at 6.) Mr. Jackson further alleges that he was misdiagnosed for a second time by Dr. Little on or about May 21, 2019. (*Id.*) Mr. Jackson contends that he complained to Dr. Little of "extreme abdominal pains" which led Dr. Little to conduct an x-ray and diagnosis Mr. Jackson with gas. (*Id.*) Subsequently, however, Mr. Jackson complained to a psychologist about his abdominal pains and his lack of bowel movements for 8-9 days, which prompted Nurse Laws-Smith to send Mr. Jackson to Crozer Chester Medical Center, where he ultimately was admitted for two weeks due to a small bowel obstruction. (*Id.*)

With respect to Defendants Wahl, Favaloro, and Laws-Smith, Mr. Jackson alleges more broadly that these Defendants were "aware of" the "complication[s]", "ongoing problems[,]" the "mistakes and mishaps[,]" and the "everlasting problems" Mr. Jackson encountered during his treatment with Dr. Little and the entire medical department at SCI Chester. (*Id.*) Mr. Jackson explicitly contends that Nurse Laws-Smith "failed to confront the medical director [Dr. Little] for these misdiagnoses on multiple occasions." (*Id.*) He also alleges that Ms. Minnis "possessed knowledge" about his condition but "failed to schedule [his] quarterly appointments, test[s] and follow-ups with [a] specialist" which ultimately led to his hospitalization. (*Id.*)

On the issue of the Hepatitis C misdiagnosis, Mr. Jackson alleges that both Nurse Collier and Dr. Robinson were aware that he did not have Hepatitis C at the time he arrived at SCI Chester, and that Dr. Robinson attempted to treat him for Hepatitis C. (*Id.* at 7.) Mr. Jackson further asserts that Nurse Collier contacted all of Mr. Jackson's specialists at other facilities informing them that the officials at SCI Chester "made the mistake of diagnosing" Mr. Jackson with Hepatitis C. (*Id.*) Mr. Jackson also alleges that Dr. Nicholson knew of Mr. Jackson's

3

ongoing medical issues but "refuse[d] to administer adequate treatment" and "denied [Mr. Jackson] medical treatment on numerous occasions under the orders of the medical director" Dr. Little. (*Id.*)

Finally, Mr. Jackson alleges wrongdoing on the part of Ms. McDuffie and Ms. Quinn. With respect to Ms. McDuffie, he claims that she has failed to answer requests for prisoner medical records in an effort to "cover up and[/]or hide vital information within these records." (*Id.*) As to Quinn, Mr. Jackson alleges that she has denied his grievances despite being "well aware of the everlasting battles" Mr. Jackson has had with the medical director, Dr. Little. (*Id.*) As relief, Mr. Jackson seeks an "injunction ordering defend[a]nts to cease their care and transfer [him] SCI Phoenix to avoid any physical violence and threats towards [him] by the medical" department. (*Id.* at 8.) He also seeks $50,000 in compensatory damages and an additional $50,000 in punitive damages, and permanent single cell housing. (*Id.*) Mr. Jackson also filed several documents (ECF Nos. 7, 8, 10, 15) seeking either a temporary restraining order or other preliminary injunctive relief similar to the relief he seeks in his Complaint.[4]

## II. STANDARD OF REVIEW

The Court will grant Mr. Jackson leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[5] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure

---

[4] These filings suggest that Mr. Jackson may be receiving chemotherapy to treat cancer and various treatments for other ailments, none of which are discussed in the Complaint.

[5] However, because Mr. Jackson is a prisoner, he is obliged to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

4

12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* Because Mr. Jackson is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

Mr. Jackson's Complaint alleges claims for violations of his civil rights pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Here, Mr. Jackson's claims relate to the medical treatment he received at SCI Chester. To state an Eighth Amendment claim based on medical treatment, a prisoner must allege facts suggesting that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference has been found "where the prison official

5

(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Allegations of medical malpractice, negligence, or mere disagreement regarding proper medical treatment do not constitute deliberate indifference and are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir.2001).

Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Although supervisors and high-ranking officials may be held liable for violating a plaintiff's rights if they participated in the wrongdoing by virtue of their own misconduct or their maintenance of a policy or custom that violated plaintiff's rights, supervisors are not subject to liability under § 1983 based solely on the conduct of their employees. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . §1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Powell v. Weiss*, 757 F.3d 338, 346 (3d Cir. 2014).

As alleged in the Complaint, the essence of Mr. Jackson's claims stems from what he contends are two separate instances where he was misdiagnosed by Dr. Little, the Medical Director at SCI Chester, with respect to his Hepatis C (which Mr. Jackson contends he does not have) and his abdominal pain (which was diagnosed as gas and turned out to be a small bowel obstruction). However, "a claim of misdiagnosis would sound in negligence as a malpractice suit, and does not constitute deliberate indifference." *See Weigher v. Prison Health Servs.*, 402 F. App'x 668, 670 (3d Cir. 2010). The facts alleged here make clear that Mr. Jackson sought

6

medical care at SCI Chester on several occasions and was provided with treatment by various medical staff members, but disputes whether the treatment he received was appropriate. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *U.S. ex rel. Walker v. Fayette Cnty., Pa.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979) (internal quotation marks omitted). Accordingly, as currently drafted, Mr. Jackson's Complaint does not state a plausible Eighth Amendment deliberate indifference claim.[6]

Additionally, Mr. Jackson's Complaint also fails to make clear how each Defendant was involved in allegedly violating his rights. Although he suggests that he has been dissatisfied with the quality of medical care at the prison, he has not sufficiently explained the facts surrounding his care or adequately described events that would support a conclusion that prison officials or healthcare providers were deliberately indifferent to his serious medical needs. He makes only broad, conclusory allegations that various Defendants were "aware" of "ongoing problems" and "mistakes and mishaps" by Little. (ECF No. 2 at 6.) He also asserts that various Defendants failed to schedule his appointments, tests, and specialist follow-ups, and have not provided him with medical records he has requested. (*Id.* at 6-7.) However, these allegations are made in a

---

[6] With respect to Defendant Nicholson, Mr. Jackson alleges only that this "physician denied [him] medical treatment on numerous occasions under the orders of the medical director[,]" and that Dr. Nicholson "knew that there were and continues to be medical problems with [Mr. Jackson] but he refuses to administer adequate treatment due to the medical director['s] specific orders to deny any and all treatment for [Mr. Jackson]." (ECF No. 2 at 7.) While allegations of a complete denial of medical care for a nonmedical reason may raise a plausible claim for deliberate indifference in certain circumstances, Mr. Jackson's allegations against Dr. Nicholson are simply too generalized, broad, and conclusory to state such a claim at this time. The Court will grant leave to amend to provide Mr. Jackson another opportunity to allege more details regarding specific instances where Dr. Nicholson allegedly denied him medical care.

7

generalized manner, and do not provide sufficient detail for the Court to determine whether Mr. Jackson can state a plausible claim against the other Defendants.

While Mr. Jackson has failed to state a plausible claim at this time, the Court is not prepared to find that Mr. Jackson cannot, if granted the opportunity, state a plausible claim (or claims) for relief. Accordingly, the Complaint will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and Mr. Jackson (through his newly authorized counsel) will be granted leave to file an amended complaint within forty-five (45) days if he wishes to proceed with the case.[7] Mr. Jackson is put on notice that if he fails to file an amended complaint within that timeframe, his case will be dismissed for failure to prosecute

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Mr. Jackson leave to proceed *in forma pauperis* and dismiss his Complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Mr. Jackson is granted leave to file an amended complaint within forty-five (45) days in the event he (now with the assistance of counsel) can cure the deficiencies identified above. Because Mr. Jackson has not stated a claim, his requests for a temporary restraining order or preliminary injunctive relief are denied without prejudice to refiling. *See Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).[8] An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER, J.

---

[7] Mr. Jackson submitted a Motion for Appointment of Counsel (ECF No. 9) after filing his Complaint. The Court granted that motion and has appointed counsel from the Court's Prisoner Civil Rights Panel. Counsel may amend the Complaint in this case in accordance with the Court's Memorandum and Order.

[8] "A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharm.*, 369 F.3d at 708.